UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

JIM BILLADO ROOFING, LLC,  :
                           :
    Plaintiff,             :
                           :
    v.                     :    File No. 1:08-CV-97
                           :
CUSTOM COPPER AND SLATE, LTD.,  :
                           :
    Defendant.             :

RULING ON PLAINTIFF'S MOTION FOR THE AWARD OF COSTS, EXPENSES, ATTORNEY'S FEES AND PREJUDGMENT INTEREST, AND DEFENDANT'S MOTION FOR RECONSIDERATION OF TIME TO FILE APPEAL
(Papers 92 and 97)

After prevailing in a jury trial, plaintiff Jim Billado Roofing, LLC ("Jim Billado") moves for attorney's fees, costs, and prejudgment interest. Paper 92. Defendant Custom Copper and Slate, Ltd. ("Custom Copper") moves for reconsideration of the Court's ruling denying an extension of time in which to file an appeal. Paper 97.

I.  Background

The Court assumes familiarity with earlier proceedings in this case. Relevant events begin with Jim Billado's acceptance of a remitted damages award on November 16, 2009. Shortly thereafter Custom Copper moved for a separate judgment, which the Court granted, and on December 14, 2009 the amended judgment was issued. On January 7, 2010, Jim Billado moved for attorney's

fees, costs, and prejudgment interest.[1]  On January 11, 2010, Custom Copper moved for an extension of time to file an appeal, which the Court denied on January 14.  On February 5, 2010, Custom Copper moved for reconsideration of the Court's ruling denying an extension of time to appeal, and on February 9, 2010, Custom Copper filed a notice of appeal.

II. Discussion

   A.  Motion for Reconsideration

"The standard for granting [a motion to reconsider] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Custom Copper's original motion for an extension of time to appeal was filed "pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure."  Paper 93 at 1.  Appellate Rule 4(a)(5) provides that a "district court may extend the time to file a notice of appeal if . . . that party shows excusable neglect or good cause."  Fed. R. App. P. 4(a)(5)(A).  This Court evaluated Custom Copper's motion under the Appellate Rule 4(a)(5) standard,

---

[1] The parties had jointly moved for an extension of time in which to file Jim Billado's motion for attorney's fees and costs, and the Court extended the deadline until January 7, 2010.

2

concluded it had not shown excusable neglect or good cause, and denied the motion. See Paper 95.

In its motion for reconsideration, Custom Copper raises entirely different grounds for extending the time to appeal. No longer relying on the Rule 4(a)(5) extension mechanism, Custom Copper argues Jim Billado's motion for attorney's fees, costs, and prejudgment interest has the effect of re-opening the window for filing an appeal. Paper 97 at 1. As discussed below, the rules on this subject are non-discretionary and do not require a court order to take effect.

Because Custom Copper has not provided any new information regarding whether it met the Appellate Rule 4(a)(5) standard — much less "controlling decisions or data that [this Court] overlooked" — and because its new theory requires no action from the Court, the motion to reconsider is denied. Shrader, 70 F.3d at 257. Nevertheless, the Court takes this opportunity to untangle the status of the case, since the parties' overlapping filings have created some confusion.

B. Current Status of the Case

Generally parties must file a notice of appeal no more than 30 days after the district court enters judgment. Fed. R. App. P. 4(a)(1)(A). Here, the amended judgment was entered on December 14, 2009, making the last day for appeal January 13, 2010.

Jim Billado moved for attorney's fees, costs, and prejudgment interest on January 7, 2010. Asking for attorney's fees had no impact on the deadline for appeal, as the Court did not enter an order under Rule 58 delaying the effectiveness of the judgment. See Fed. R. Civ. P. 58; Fed. R. App. P. 4(a)(4)(A)(iii); Budinich v. Becton Dickinson & Co., 486 U.S. 196 (1988). The request for costs similarly did not affect the deadline for appeal. See Buchanan v. Stanships, Inc., 485 U.S. 265 (1988) (per curiam). By asking for prejudgment interest, however, Jim Billado did alter the window for appeal.

A motion for prejudgment interest constitutes a Rule 59(e) motion to alter or amend the judgment, when the decision to grant interest is discretionary. Osterneck v. Ernst & Whinney, 489 U.S. 169 (1989). Accordingly, the motion triggers Appellate Rule 4(a)(4), which provides that "the time to file an appeal runs for all parties from the entry of the order disposing of the . . . motion." Fed. R. App. P. 4(a)(4)(A).[2] The motion for prejudgment interest must be timely, however, in order to re-open the time for filing an appeal. Camacho v. City of Yonkers, 236 F.3d 112, 113 (2d Cir. 2000). Here, the timeliness of Jim Billado's motion is slightly complicated.

---

[2] The same result would hold — via Rule 60 — even if the decision to grant interest were non-discretionary. See Osterneck, 489 U.S. at 176 n.3; Fed. R. App. P. 4(a)(4)(A)(vi).

4

The parties jointly moved on December 23, 2009, for an extension of time for Jim Billado to file its motion for costs and attorney's fees. Paper 90. This Court granted the motion, giving Jim Billado until January 7, 2010. Paper 91. The joint motion for extension of time did not ask for an extension of time to file a motion for prejudgment interest, however, see Paper 90, and even if it had, the Court could not have granted such a motion. See 16A Charles Alan Wright et al., Federal Practice & Procedure § 3950.4 (4th ed. 2008) ("[L]itigants should keep in mind that the district court lacks authority to extend the time periods set by Civil Rules 50(b) and (d), 52(b), and 59(b), (d), and (e)."). Accordingly, the Rule 59(e) deadline as written governs the timeliness of Jim Billado's motion for prejudgment interest. That deadline was recently amended, though, requiring further analysis.

Prior to December 1, 2009, Rule 59(e) required motions to alter a judgment to be filed no later than 10 days after entry of the judgment. Effective December 1, 2009, Rule 59(e) now allows 28 days for motions to alter a judgment. Fed. R. Civ. P. 59(e). The Court entered judgment on December 14, 2009, and Jim Billado filed its motion for prejudgment interest on January 7, 2010, so under the former rule, Jim Billado's motion would be untimely, while under the amended rule it would be timely. To resolve which version applies, the Court turns to Rule 86, which states

that newly amended rules govern "proceedings . . . then pending unless . . . the court determines that applying them . . . would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2). Here, there is no apparent reason why applying the new 28-day deadline would be infeasible or work an injustice, so the Court applies the amended Rule 59(e) to Jim Billado's motion. Accordingly, the Court finds the motion for prejudgment interest was timely filed.

Because Jim Billado's motion for prejudgment interest was timely filed, "the time to file an appeal runs for all parties from the entry of the order disposing of the [motion]." Fed. R. App. P. 4(a)(4)(A). Jim Billado's motion has not yet been disposed of, however, so Custom Copper's February 9, 2010 notice of appeal was premature. In such a situation, the premature notice of appeal "becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(I). Thus Custom Copper's notice of appeal is currently inactive, but "will ripen into an effective appeal upon disposition of [Jim Billado's] post-trial motion [for interest]." Fed. R. App. P. 4 (1993 Committee Note). Jim Billado's motion is resolved below, so the notice of appeal will become effective on issuance of this Ruling.

C. <u>Motion for Costs, Attorney's Fees, and Prejudgment Interest</u>

1. <u>Costs</u>

Costs are governed by Rule 54(d), which states, "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Here, neither party suggests special circumstances apply, so an award of costs is appropriate. See <u>Whitfield v. Scully</u>, 241 F.3d 264, 270 (2d Cir. 2001) (noting that awarding costs "is the normal rule obtaining in civil litigation, not an exception").

The only costs challenged by Custom Copper are $744.40 for printed and electronically recorded transcripts. In particular, Custom Copper argues certain deposition transcripts should not be taxed, since Jim Billado did not use them at trial. This is not the relevant test, however; deposition costs are taxable so long as the deposition reasonably seemed necessary at the time it was taken. See, e.g., <u>In re Williams Secs. Litig. – WCG Subclass</u>, 558 F.3d 1144, 1147-48 (10th Cir. 2009); <u>Shannon v. Firemen's Fund Ins. Co.</u>, 156 F. Supp. 2d 279, 304 (S.D.N.Y. 2001). Here, Jim Billado did not use the deposition transcripts at trial, but it was reasonable to anticipate requiring them. Accordingly, these costs are allowed.

Jim Billado's motion is granted to the extent it asks for costs; the Clerk of Court shall prepare a taxation of costs reflecting the precise figures allowed.

### 2. Attorney's Fees and Expenses

In diversity cases, the right to attorney's fees — if any — is determined by state law. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177 (2d Cir. 2005); Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992). Vermont law therefore governs Jim Billado's request for attorney's fees.

Jim Billado brought suit under Vermont contract law and the Vermont Prompt Payment Act ("VPPA"), Vt. Stat. Ann. tit. 9, §§ 4001-09 (2009). In Vermont contract cases, the traditional "American rule" applies and each party bears their own attorney's fees unless the contract in question states otherwise. See Fletcher Hill, Inc. v. Crosbie, 872 A.2d 292, 294-95 (Vt. 2005); DJ Painting, Inc. v. Baraw Enters., Inc., 776 A.2d 413, 419 (Vt. 2001). Under the VPPA, by contrast, "the substantially prevailing party in any proceeding to recover any payment within the scope of [the Act] shall be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses." Vt. Stat. Ann. tit. 9, § 4007(c) (2009).

In cases involving multiple theories of recovery, one of which is the VPPA, the Vermont Supreme Court has clearly stated the VPPA's attorney's fees provision should apply in full. See The Electric Man, Inc. v. Charos, 895 A.2d 193 (Vt. 2006). That is, courts are not to pro-rate the VPPA attorney's fee award in proportion to the recovery made under the VPPA, so long as "the claims at issue share a common core of facts." Id. at 197. Here, Jim Billado's breach of contract claim and VPPA claim both arose from the same set of facts, and "[v]irtually all of the evidence [was] relevant to [both] of the claims." Id. Therefore attorney's fees are governed wholly by the VPPA.

Under the VPPA, "the mandatory language of § 4007(c) requires an award of attorney's fees to a substantially prevailing party." Fletcher Hill, 872 A.2d at 296. The only discretionary issue for the Court to determine — and the only one contested by Custom Copper — is whether Jim Billado was a "substantially prevailing party." Id. Custom Copper argues Jim Billado should not be deemed a substantially prevailing party because the Court remitted the jury's damages award and the jury award reflected $30,000 in payments already made by Custom Copper. Paper 96 at 8. According to Custom Copper, both of these factors mean Jim Billado failed to recover the full amount of damages it was seeking.

9

The Court rejects Custom Copper's argument.  Jim Billado prevailed on all claims at the jury trial, including Custom Copper's counterclaim for breach of contract.  See Paper 69 (jury verdict).  Furthermore, the Court's remittitur order clearly stated the reduction in damages was simply due to the jury's miscalculation, and the new award of damages was "the maximum amount the jury could award."  Paper 83 at 4.  This was a "'clear victory in favor of the plaintiff,'" and suffices to make Jim Billado a substantially prevailing party under the Prompt Payment Act.  Fletcher Hill, 872 A.2d at 296 (quoting trial court).  Accord DJ Painting, 776 A.2d at 420.

Turning to the amount of attorney's fees due, Vermont law uses the typical "lodestar" calculation: "the number of hours reasonably expended on the case multiplied by a reasonable hourly rate."  L'Esperance v. Benware, 830 A.2d 675, 682 (Vt. 2003) (awarding attorney's fees under a similar statute).  Having found a reasonable lodestar amount, the court can "adjust[] that fee upward or downward based on various factors."  Id. at 683.

Jim Billado submits affidavits and billing records documenting the time spent on this case and the fees charged.  See Papers 92-1, 100-1.  Through the various phases of the case, counsel for Jim Billado billed 185 hours for work on the merits of the case and 15.6 hours relating to the petition for attorney's fees.  The bulk of these hours were by an associate,

with smaller amounts billed by a partner and paralegal. Counsel's billing rates started at $180/hour, $140/hour, and $70/hour respectively, for the partner, associate, and paralegal. During the pendency of the case the billing rates went up to $175/hour for the associate, and $75/hour for the paralegal.[3] Combining the hours and rates, the total requested attorney's fee award is $28,460.50.

The total number of hours and the billing rates appear reasonable, based on comparison with similar cases and prevailing rates in the District of Vermont. See Perez v. Travelers Ins. ex rel. Ames Dep't Stores, Inc., 915 A.2d 750 (Vt. 2006). Moreover, Custom Copper does not contest the hourly rates or number of hours billed. See Paper 96 at 7-8 (arguing against attorney's fees solely on the "prevailing party" issue, and not addressing the amount of fees). One small aspect of the billed amounts appears questionable, however: counsel charged full hourly rates for travel between Burlington and Brattleboro. The Court reduces the overall award by $2,500 to reflect a more realistic pay-scale for driving, especially given that mileage is separately compensable, as noted below. See LV v. New York City Dep't of Educ., No. 03 Civ. 9917, 2010 WL 1244287, at *12 (S.D.N.Y. Mar. 31, 2010) (reducing award for travel time). With this

---

[3] No hours were billed by the partner after the rate increase.

alteration, attorney's fees are approved in the amount of $25,960.50.

Jim Billado also asks for an award of "expenses" under the VPPA in the amount of $1,516.94, for legal research, travel, meals, and incidental expenses. Paper 92 at 8-9; Paper 100 at 2. The VPPA states the prevailing party "shall be awarded reasonable attorney's fees . . . together with expenses," Vt. Stat. Ann. tit. 9, § 4007(c) (2009), but provides no guidance as to what is meant by "expenses." The Vermont Supreme Court has not addressed the issue either.

In other contexts, courts have found online research fees, travel, and incidental costs compensable. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 97-98 (2d Cir. 2004) (per curiam) (allowing online research charges in an award of attorney's fees under the federal Voting Rights Act of 1965); Robinson v. City of New York, No. 05 Civ. 9545, 2009 WL 3109846, at *14 (S.D.N.Y. Sept. 29, 2009) (slip op.) (allowing online research and travel expenses under 42 U.S.C. § 1988). Custom Copper provides no relevant objections to awarding these costs to Jim Billado under the VPPA's "expenses" language. See Paper 96 at 9-10 (arguing against these expenses in terms of 28 U.S.C. § 1920, while ignoring the VPPA). Accordingly, the Court finds the requested items fall within the

statutory language of "expenses," and awards $1,516.94 to Jim Billado.

### 3. Prejudgment Interest

Jim Billado also asks for prejudgment interest on its $61,520.82 damages award. Paper 92 at 9-11. The VPPA provides for prejudgment interest as follows:

> If arbitration or litigation is commenced to recover payment due under the terms of this chapter and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this chapter, the arbitrator or court shall award, in addition to all other damages due and as a penalty, an amount equal to one percent per month of all sums as to which payment has wrongfully been withheld. An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against which an invoicing contractor or subcontractor is seeking to recover payment.

Vt. Stat. Ann. tit. 9, § 4007(b). Thus under the VPPA, courts must award prejudgment interest on damages unless the defendant presents a good faith counterclaim. As an additional qualification, the Vermont Supreme Court has stated prejudgment interest should not be granted if the amount of damages is not readily ascertainable prior to trial. See B&F Land Dev., LLC v. Steinfeld, 966 A.2d 127, 132 (Vt. 2008); see also J.A. McDonald, Inc. v. Waste Sys. Int'l Moretown Landfill, Inc., 247 F. Supp. 2d 542, 548 (D. Vt. 2002).

The Court finds the amount owed was readily ascertainable prior to trial. The jury's VPPA award of $61,520.82 matches

13

exactly the amount billed on three invoices admitted at trial, and the Court's remittitur order reduced the overall damages to this same amount. See Paper 69 at 2; Paper 83 at 4-5. When the damages awarded reflect the amounts actually billed, courts generally treat the amount owed as having been reasonably ascertainable prior to trial. See B&F Land Dev., 966 A.2d at 132-33 (affirming grant of prejudgment interest, where jury award matched billing invoices). Custom Copper argues against this conclusion, claiming Jim Billado's billing practices and invoices were so jumbled as to make the amount owed unclear. Paper 96 at 3-7. The Court rejects this argument, as the amount owed need not be precisely defined, only "capable of ready ascertainment." B&F Land Dev., 966 A.2d at 132. Here, Jim Billado's invoices show conflicting and unexplained billing amounts, see Papers 96-4 to 96-12, but it would have been a straightforward matter for Custom Copper to call Jim Billado and clarify the exact amount owed.

As to whether Custom Copper had a "good faith" counterclaim, Jim Billado points out the jury rejected Custom Copper's counterclaim and found no breach of contract. Paper 92 at 11. According to Jim Billado, this means the counterclaim could not have been in good faith. Id. In order for the counterclaim to have been in good faith, Jim Billado argues, the counterclaiming party must either (1) prevail on the claim or (2) request and

receive a specific finding from the jury that the claim at least had a good faith basis.  Id.; Paper 100 at 5.  Custom Copper disagrees, arguing the evidence here was sufficient to show its counterclaim was made in good faith, even if it did not prevail before the jury.  Paper 96 at 6-7.

As a general matter, a "good faith" counterclaim need not prevail.  If that were the case, the good faith requirement in § 4007(b) would be surplusage; prejudgment interest obviously does not extend to damages that are offset by a successful counterclaim.  Thus good faith is a separate issue from the ultimate resolution of the claim.

In terms of whether a party must request and receive a finding from the jury on good faith, the Vermont Supreme Court has stated: "[Defendants] did not seek a finding that they acted in good faith, and the [trial] court did not make such a finding. We cannot therefore conclude that [the good faith] defense [in § 4007(b)] is available." Naylor v. Cusson, 940 A.2d 717, 722 (Vt. 2007).  Contrary to Jim Billado's assertion, this good faith finding need not come from the jury.  The issue of prejudgment interest often arises after trial, and requiring a party to seek a good faith finding during trial unnecessarily hamstrings the defense.  The Vermont Supreme Court's statement simply notes that appellate courts are not well positioned to make a factual finding of good faith; it does not require that finding to be

made by a jury, rather than a judge. Accordingly, it is still open for this Court to find Custom Copper's counterclaim was made in good faith. Based on the pretrial filings and evidence received at trial, the Court finds Custom Copper's counterclaim was made in good faith, and declines to award prejudgment interest to Jim Billado.

III. Conclusion

For the above reasons, Custom Copper's motion to reconsider is denied. Jim Billado's motion for costs, fees, and interest is:

(1) granted to the extent it asks for costs, with the precise amounts to be determined by the Clerk;

(2) granted as modified with respect to attorney's fees and expenses, entitling Jim Billado to $25,960.50 in attorney's fees and $1,516.94 in expenses; and

(3) denied with respect to prejudgment interest.

Custom Copper's notice of appeal filed February 9, 2010 (Paper 99) will become effective upon the filing of this Ruling.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 10th day of May, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge